IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ISMAEL FELIX ROSARIO,               :        No. 3:25cv628
                                    :
                Plaintiff           :        (Judge Munley)
                                    :
        v.                          :
                                    :
C.O. MCINTYRE, et al.,              :
                                    :
                Defendants          :

**MEMORANDUM**

Plaintiff Ismael Rosario ("Rosario"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983, against Wellpath, and Correctional Officer McIntyre, Superintendent Salamon, Lieutenant Stabley, and Jane Doe. (Doc. 1).

Before the court is a motion to dismiss by Wellpath LLC and any current and/or former employees of Wellpath, LLC (the "Wellpath defendants"). (Doc. 19). For the reasons that follow, the court will deny the motion.

I.    **Allegations of the Complaint**

At all relevant times, Rosario was housed at the State Correctional Institution, Rockview, in Bellefonte, Pennsylvania ("SCI-Rockview"). (Doc. 1). Rosario alleges that on June 28, 2024, he asked defendant McIntyre if he could speak with a Lieutenant. (Id. at 4). In response, Rosario alleges that defendant

McIntyre "instantly" pulled out his Oleoresin Capsicum spray ("OC spray") and "aimed it at [Rosario's] face." (Id.).  After asking defendant McIntyre if he was going to use his OC spray for asking to speak with a Lieutenant, defendant McIntyre allegedly deployed the OC spray all over Rosario's body.  (Id.).  Rosario was then removed from his cell, escorted to the triage room, and examined by medical staff.  (Id.).

After receiving a medical examination, defendant Stabley ordered that Rosario be escorted back to his cell.  (Id.).  Despite other officers allegedly asking defendant Stabley if Rosario should shower first to remove the OC spray, defendant Stabley stated "no just take him back to his cell.  He will be fine." (Id.).  Rosario alleges that he was escorted back to his cell and "left to burn for hours due to the OC spray not being properly removed."  (Id.).

Based upon these alleged events, Rosario sets forth an Eighth Amendment Cruel and Unusual Punishment claim, and a Fourteenth Amendment Equal Protection claim.  (Id. at 5).

## II.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all

2

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the…claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the

3

court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## III.    **Discussion**

The Wellpath defendants filed a motion to dismiss all claims against them based on the release of claims included in the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates to the Plan of Reorganization ("Plan") confirmed by the United States Bankruptcy Court for the Southern District of Texas, Houston, Texas (the "Bankruptcy Court"). (Docs. 19, 20). The court will deny the motion.

On November 11, 2024 (the "Petition Date"), the Debtors, including Wellpath Holdings, Inc. and its affiliated companies, filed petitions in the Bankruptcy Court under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Cases"). The Bankruptcy Cases were jointly administered under case number 24-bk-90533 in the Southern District of Texas. In re: Wellpath Holdings, Inc., No. 4:24-bk-90533 (Bankr. S.D. Tex.).

4

Rosario named Wellpath as a defendant.  (Doc. 1, at 3).  Wellpath is an affiliated Debtor in the Bankruptcy Case.

On May 9, 2025 (the "Effective Date"), the Debtors filed Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Administrative Claims Bar Date giving notice that the Plan was effective.  In re: Wellpath Holdings, Inc., No. 4:24-bk-90533, Doc. 2680.  Under the Plan and Confirmation Order, all claims and causes of action (as defined in the Plan) against Wellpath Holdings, Inc. and its affiliated Debtors have been discharged and holders of such claims and causes of action are permanently enjoined from, among other things, commencing or continuing any proceeding of any kind in connection with such claims.  See 11 U.S.C. § 524 (a) ("A discharge in a case under this title… (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor…").

But the Plan permitted claimants to opt-out of the Third-Party Release in order to proceed in the district court for any individual capacity claims against Wellpath employees.  Under the Plan, incarcerated individuals who had personal injury claims pending against non-debtor defendants (Wellpath's directors, officers, and other employees) had until July 30, 2025 to opt-out of the Third-Party releases of claims against non-debtor defendants.  See Order Confirming

5

Ch. 11 Plan, In re Wellpath Holdings, No. 24-bk-90533, Doc. 2596, at 52 ¶ 43; Doc. 2596, at 82 ¶ 178 (Article I.A. 178). Article IX.F of the Plan provides that holders of claims subject to the Third-Party Release who did not opt-out are permanently enjoined from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan." Id., Doc. 2596 at 134, Article IX.F. The deadline to exercise this opt-out right has passed.

The Wellpath defendants' motion alleges that Rosario did not opt-out of the Third-Party Release before the deadline. (Doc. 19 ¶ 18; Doc. 20). The court directed Rosario to file a response to the Wellpath defendants' motion. (Docs. 23, 25). In response, Rosario filed a declaration and motion to stay, stating that he submitted a motion to the Bankruptcy Court seeking to deem his opt-out of the Third-Party Release as timely, and asking that this court stay disposition of the Wellpath defendants' motion to dismiss. (Docs. 26, 27). The court granted Rosario's motion to stay and directed him to promptly notify this court of the Bankruptcy Court's ruling on his motion. (Doc. 28). Rosario did not respond. However, this court reviewed the docket in the Wellpath Bankruptcy case and confirmed that Rosario filed a motion seeking to have his opt-out deemed timely and that the Bankruptcy court "deem[ed] the filing by Mr. Rosario to be a timely

6

opt out of the third-party releases contained in the Plan." In re Wellpath SF Holdco, LLC, No. 24-bk-90566 (Bankr. S.D. Tex.), Docs. 1063, 1253.  Therefore, this court will deny the Wellpath defendants' motion to dismiss based on Rosario's alleged failure to opt-out of the Third-Party Release.

## IV.    Conclusion

For the foregoing reasons, the court will deny the Wellpath defendants' motion to dismiss.  (Doc. 19).  An appropriate order shall issue.

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

Dated:    May 22, 2026

7