IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ISMAEL FELIX ROSARIO,               :        No. 3:25cv628
                                    :
                Plaintiff           :        (Judge Munley)
                                    :
        v.                          :
                                    :
C.O. MCINTYRE, et al.,              :
                                    :
                Defendants          :

## MEMORANDUM

Plaintiff Ismael Rosario ("Rosario"), an inmate in the custody of the

Pennsylvania Department of Corrections ("DOC"), initiated this pro se civil rights

action pursuant to 42 U.S.C. § 1983, against Correctional Officer McIntyre,

Superintendent Salamon, and Lieutenant Stabley (collectively, the "corrections

defendants"), Wellpath, LLC, and Jane Doe.  (Doc. 1).

Before the court is the corrections defendants' motion to dismiss the

complaint in part.[1]  (Doc. 21).  Rosario failed to respond to the motion and the

time for responding has now passed.[2]  Therefore, the motion is deemed

---

[1] The corrections defendants assert that if their motion is granted, this action shall only proceed against them on the Eighth Amendment Cruel and Unusual Punishment claim.  (Doc. 22 at 7).

[2] Rosario was directed to file a brief in opposition to the corrections defendants' motion and was admonished that failure to file an opposition brief would result in the motion being deemed unopposed.  (Doc. 23) (citing LOCAL RULE OF COURT 7.6).

unopposed and ripe for resolution. For the reasons that follow, the court will grant the motion.

I.   **Allegations of the Complaint**

At all relevant times, Rosario was housed at the State Correctional Institution, Rockview, in Bellefonte, Pennsylvania ("SCI-Rockview"). (Doc. 1). Rosario alleges that on June 28, 2024, he asked defendant McIntyre if he could speak with a Lieutenant. (Id. at 4). In response, Rosario alleges that defendant McIntyre "instantly" pulled out his Oleoresin Capsicum spray ("OC spray") and "aimed it at [Rosario's] face." (Id.). After asking defendant McIntyre if he was going to use his OC spray for asking to speak with a Lieutenant, defendant McIntyre allegedly deployed the OC spray all over Rosario's body. (Id.). Rosario was then removed from his cell, escorted to the triage room, and examined by medical staff. (Id.).

After receiving a medical examination, defendant Stabley ordered that Rosario be escorted back to his cell. (Id.). Despite other officers allegedly asking defendant Stabley if Rosario should shower first to remove the OC spray, defendant Stabley stated "no just take him back to his cell. He will be fine." (Id.). Rosario alleges that he was escorted back to his cell and "left to burn for hours due to the OC spray not being properly removed." (Id.).

Based upon these alleged events, Rosario sets forth an Eighth Amendment Cruel and Unusual Punishment claim, and a Fourteenth Amendment Equal Protection claim.  (Id. at 5).

## II.    **Legal Standards**

### A.    Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the…claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

     B.    42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

4

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

## III.    Discussion

### A.    Claims Against Defendant Salamon

Rosario failed to allege any facts suggesting that defendant Salamon was personally involved in the alleged wrongful conduct. (See Doc. 1). Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs...Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or

5

involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  Rode, 845 F.2d at 1208.

Other than listing Superintendent Salamon as a defendant, the complaint does not contain a single allegation against her.  (See Doc. 1).  Because the complaint is completely silent as to defendant Salamon, it is impossible to determine the alleged unconstitutional action, if any, taken by this defendant. Rosario does not provide any basis as to how defendant Salamon violated his rights.  This style of pleading is patently inadequate since it fails to allege facts that give rise to a plausible claim for relief.  Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case).

In addition, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.  See Rode, 845 F.2d at 1207.  Any attempt by Rosario to hold defendant Salamon liable for the actions of her subordinates is essentially an assertion of respondeat superior liability which seeks to hold them liable based on their supervisory roles.  This ground of constitutional liability has been squarely rejected by the courts.  See Rode, 845 F.2d at 1207.

Instead, if Rosario seeks to hold defendant Salamon liable as a supervisor for unconstitutional acts by her subordinates, his allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); see Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from

the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 227 (3d Cir. 2015) (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)).

For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho, 423 F.3d at 354). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode, 845 F.2d at 1201 n.6).

8

Rosario's supervisory liability claim fails because he has not set forth any allegations against defendant Salamon. Specifically, he has not alleged that defendant Salamon, acting with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused Rosario to suffer constitutional harm. Nor does Rosario allege that defendant Salamon participated in the wrongful conduct, directed others to participate in the wrongful conduct, or had actual knowledge of the wrongful conduct.

For these reasons, the court will grant the corrections defendants' motion to dismiss Superintendent Salamon from this action.

B.    Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment states that no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). "[T]o bring a successful equal protection claim, plaintiffs 'must demonstrate that they received different treatment from that received by other individuals similarly situated.'" Children's Health Defense, Inc. v. Rutgers, the State Univ. of N.J., 93 F.4th 66, 84 (3d Cir. 2024) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176,

9

196 (3d Cir. 2009)). At the pleading stage, a plaintiff must make nonconclusory allegations that he and the similarly situated individuals who were allegedly treated differently from him are "alike 'in all relevant respects.'" Id. (quoting Harvard v. Cesnalis, 973 F.3d 190, 205 (3d Cir. 2020)).

There are simply no allegations in the complaint that Rosario was treated differently from any similarly situated individuals. (See Doc. 1). Other than a one-line reference to the equal protection clause (id. at 5), the complaint is devoid of any allegations to establish that any other inmates, who were treated differently from him, were "alike in all relevant respects" to Rosario. Children's Health Defense, Inc., 93 F.4th at 84. Accordingly, Rosario has failed to allege the existence of similarly situated individuals, and the court will grant the corrections defendants' motion to dismiss the equal protection claim.

## IV.   Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). The court may decline to permit amendment, however, where there is

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Id.

The court concludes that it would be inequitable to permit Rosario leave to file an amended complaint because he failed to respond to the corrections defendants' motion to dismiss, despite being ordered to do so, and despite this court's warning that a failure to respond would result in the motion being deemed unopposed. (See Doc. 23).

V.    **Conclusion**

For the foregoing reasons, the court will grant the corrections defendants' motion to dismiss the complaint in part. (Doc. 21). An appropriate order shall issue.

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

Dated:    June ____, 2026

11